## In re ELM BREWING CO.

(District Court, E. D. New York. June 8, 1904.)

1. BANKRUPTCY—RIGHT OF PLEDGEE OF COLLATERAL—SALOON LICENSE CERTIFICATES.

A brewery company, prior to its bankruptcy, had advanced the money to pay the annual liquor licenses for several saloons, taking as security an assignment of the license certificates, which it afterwards pledged to a bank as collateral for a loan. Such certificates were subject to surrender, and had a surrender value, dependent upon the length of the unexpired portion of the term. After the bankruptcy, the bank continued to hold the certificates, and meantime the receiver and trustee of the bankrupt continued to make collections from certain of the saloonkeepers on account of the advances. *Held*, that the bank was in equity entitled to such collections to apply on its debt, since they by so much reduced the value of its security, its interest in the certificates being only that of the bankrupt, and since, moreover, it was only by its permitting them to remain in force, instead of surrendering them, that the trustee was enabled to make the collections, and to continue the saloons in business as customers, to the advantage of the bankrupt estate.

In Bankruptcy. On claim of the Federal Bank of New York to recover the proceeds of collateral collected by the receiver and trustee.

Joseph Marx, for Federal Bank of New York.

Kenneson, Emley & Rubino, for receiver and trustee.

THOMAS, District Judge. The Elm Brewing Company before its bankruptcy advanced the money to pay for the annual liquor licenses for the several saloons to which it sold beer. The licenses were assigned by the proprietors of the saloons severally to the Elm Brewing

Company, and were by the latter assigned to the Federal Bank of New York, as collateral for a loan of $10,000, for which 12 notes were given, each for the sum of $833.34, maturing one on the 1st day of each month from May, 1903. For the use of such money, the Elm Brewing Company paid the sum of $1,500. The brewing company executed a separate assignment of each license certificate as follows:

"For value received, the Elm Brewing Company hereby assigns, transfers, and sets over unto ————— all its right, title, and interest in and to the liquor tax certificate numbered ————, mentioned and described in the inclosed assignment, and does hereby expressly make, constitute, and appoint the said ————— its true and lawful attorney irrevocable, with all the rights, powers, and privileges which it, the said Elm Brewing Company, has under and by virtue of the said assignment hereto annexed."

The assignment to the brewing company recites the advancement of the money to the applicant for the license by the company to pay for the certificate, and that in consideration thereof the applicant sells and transfers to the company "all the right, power, and option which I [the applicant] have, or which I shall hereafter have, under the said tax certificate and the provisions of said statute, to surrender or cancel said tax certificate, or to have the said tax certificate transferred to any other premises than those above mentioned, or to sell, assign, or transfer the said tax certificate, or to receive and collect the amount of any unexpired coupons on said tax certificate, and any money due or to become due upon the surrender, transfer, or cancellation of said tax certificate." Then follows power of attorney and authority to enable the foregoing provision to be utilized.

The notes given the bank, and maturing the 1st day of June, July, August, September, October, and November, 1903, were paid. In October, 1903, the brewing company went into involuntary bankruptcy. On March 1st the trustee paid to the Federal Bank $812.51, the surrender value of five certificates which the bank held, as aforesaid; the surrender value being for the months of March and April. These five certificates included two issued, one to Vienot and the other to Carena, for each of which the brewing company had advanced $975, and on account of each of which the trustee or the receiver in bankruptcy had collected from Vienot $431.25, and from Carena $381.25, the total amount being $812.50.

Taking Vienot's case for the purposes of the discussion, the facts are that Vienot applied for a certificate. The company advanced $975 for the tax, took the certificate as security for the loan, pledged the certificate for a loan made to it by the bank. The receiver or trustee collected $431.25 from Vienot on her indebtedness, and finally paid the bank for the surrender value of the certificate for March and April, 1904; the value and valuable use of the certificate to the pledgee practically being its surrender value. The company could and did confer on the bank only such rights in the certificate as it had. The company's property, hence the bank's property, in the certificate, diminished with payment by Vienot. If Vienot paid her whole debt, the company's and bank's interest in the certificate ceased at once, and Vienot could compel its surrender to her. Each dollar that the company collected from Vienot correspondingly shrunk the bank's property interest in the certificate. If the bank surrendered the certificate to the commis-

sioner of excise, it could retain of the unpaid money only such sum as the company had not collected of Vienot. If the company collected the whole $975, the bank could retain nothing. After the company collected the $431.25, the proceeds of surrender could be applied only to the remainder of the indebtedness. But the surrender of the certificate was not expected to precede the maturity of the note, yet the collection from Vienot was expected to be continuous. Had the bank surrendered the certificate, it would have ended Vienot's business, and practically rendered the company's or trustee's claim valueless. Hence, the retention of the certificate by the bank was necessary and expected, and, as it was likewise necessary and expectable that the company would collect the debt from Vienot, and as the amount thus collected pro tanto diminished the bank's security, it is inconceivable that the collection could be made by the company or the trustee except in behalf of the bank. At least it was made and kept by the company or trustee at the expense of the bank. As the company and trustee diminished the bank's security by the collection of the company's debt, and could do this even to the point of extinguishing the security, it would seem that the bank could have enjoined the collection of the debt by the company, and also by the receiver or trustee, had the court permitted. Hence, the case is that the trustee has been collecting money, and thereby impairing the bank's security with each dollar collected, and the bank has meanwhile forborne to surrender the certificate, which would have seriously injured the business of the brewery in the trustee's hands. There is the strongest equity in favor of the petitioner's claim, and it should be granted. But it is urged that the company paid $1,500 for the use of the money, and that $900 of such sum was usurious. Attention is not called to any right of the trustee to set it off against the present claim. Perhaps upon a full accounting it should be equitably deducted from any sum owing by the company, or perhaps the amount of the excess interest proportionally applicable to the Vienot and Carena claims should be deducted. If counsel have any suggestions respecting either of these questions, they may be submitted.